604 A.2d 999
STATE OF NEW JERSEY, PLAINTIFF,
v. MARK NELSON, DEFENDANT.

Superior Court of New Jersey
Law Division, Somerset County

Decided January 9, 1992.

*Nicholas L. Bissell, Jr.,* Prosecutor of Somerset County, *Robin L. Bolner,* Assistant Prosecutor, appearing for the State.

*Purcell, Ries, Shannon, Mulcahy & O'Neill (Kevin Brotz,* appearing) for the defendant.

DILTS, J.S.C.

On September 17, 1991 Ms. Reya Booker filed a Domestic Violence Complaint and requested that the Court enter a protective order under the Prevention of Domestic Violence Act to restrain this defendant, Mark Nelson, from having contact with

her and seeking other remedies available under the act. Prior to September 17, 1991, other orders had been entered restraining defendant Nelson from contacting Ms. Booker. Those orders had been vacated at the request of Ms. Booker. This court on September 17, 1991 entered a temporary restraining order under the Prevention of Domestic Violence Act restraining defendant Nelson from contacting Ms. Booker. Prior to service of the temporary restraining order by Bridgewater Township Police, defendant Nelson allegedly attempted to murder Ms. Booker by stabbing her repeatedly with a screwdriver (Indictment $ 91–12–0607–I). The indictment alleges that the actions by defendant Nelson on or about September 18, 1991 are a crime of the first degree, carrying a presumption of incarceration for a term of 10 to 20 years (2C:43–6), if defendant is found guilty of the charges.

Bail was fixed by this Court on the attempted murder charges in the amount of $100,000, no 10 percent provision to apply. Defendant Nelson, unable to post the required bail, remains in Somerset County Jail.

While in the Somerset County Jail, defendant Nelson is alleged to have sent three letters to the victim, Ms. Booker. The letters were postmarked October 11, 1991, October 15, 1991, and October 21, 1991. These letters provide the basis for complaints for contempt and harassment that were filed against Mr. Nelson and bear Docket Numbers FO–18–0090–92–C, FO–18–0091–92–C and FO–18–0095–92–C. The first letter is two pages and contains, among other statements, the following:

"I'm in some bad situations right now ... I'm a little upset about things I done ... You know just as well as I know that I'm not gonna see the street for a long time ... My life is all messed up right now. When I was in the courtroom I felt real bad about things ... With the drugs and alcohol none of this would have never happened."

The second letter is a one page letter and contains, among other statements, the following:

"I wish that none of this had happened it's hurting me so bad. I can't ease the pain. I never really wanted to cause any sorrow or pain. All I.wanted to be a friend. I didn't want to be a weekend lover. I only really wanted is to be your

lover ... at night I lay down and cry about this. I know you probably think that I'm just bulls___ing but it's the truth. It just hurted me so much when another guy stepped in my place ... I almost took my life away but I went and seeked some help."

The third letter is two pages and contains, among other statements, the following:

"I don't understand why you are trying to get me in more trouble than I'm in you know that my whole life is ruined anyway why make it worse ... I know all the things I did wrong but think about the things you did too ... because I feel sorry for what I did and it was wrong. Please don't be trying to look for revenge. Leave all that in God's hand ... all I want is to get out and go in a whole different direction instead of going on the same one."

On December 12, 1991 defendant's counsel in the contempt/harassment matters filed a motion to adjourn the trial in the contempt/harassment complaints until after the trial of the pending attempted murder indictment on the grounds that the trial of the contempt/harassment matter would violate the rights guaranteed to defendant under the United States Constitution, the New Jersey Constitution, New Jersey Statutes, and New Jersey Court Rules with regard to double jeopardy, the right against self-incrimination, fundamental fairness, and due process of law. The Somerset County Prosecutor responded by letter brief dated December 18, 1991 indicating that the State's position was that the trial of the contempt/harassment matters should not be adjourned, that double jeopardy does not attach, and that defendant's rights to fundamental fairness and due process are not violated by proceeding with trial on the contempt/harassment matter prior to the trial on the attempted murder complaint. With respect to self-incrimination, the State contends that if defendant's testimony at the contempt/harassment trial would incriminate him, then he has the right to invoke his Fifth Amendment privilege and refuse to answer questions posed to him. Therefore, his constitutional rights against self-incrimination are not violated. For these reasons, the State requests that the motion to delay the contempt/harassment trial be denied.

■ This court finds that there are no constitutional impediments to trial of the contempt/harassment complaints prior to the attempted murder trial. The court is satisfied that double jeopardy does not attach. See *State v. Yoskowitz*, 116 *N.J.* 679, 563 *A.*2d 1 (1989); *State v. Currie*, 41 *N.J.* 531, 197 *A.*2d 678 (1964); *State v. Cormier*, 46 *N.J.* 494, 218 *A.*2d 138 (1966); *Blockburger v. United States*, 284 *U.S.* 299, 52 *S.Ct.* 180, 76 *L.Ed.* 306 (1932); *Illinois v. Vitale*, 447 *U.S.* 410, 100 *S.Ct.* 2260, 65 *L.Ed.*2d 228 (1980). Although it was argued that the defendant's right to fundamental fairness and due process would be violated by proceeding with the contempt/harassment prior to the attempted murder complaint, no authority for this proposition was ever presented to the court and this court concludes that the defendant's right to fundamental fairness and due process are not violated by proceeding with the contempt/harassment trial at this time. With respect to the self-incrimination argument, the court is satisfied that the protection against self-incrimination is not a sword to be used by the defendant in an effort to control the timing of criminal trials, but rather is a shield to protect the defendant from being forced to be a witness against himself. At a trial on the contempt/harassment complaints, defendant Nelson will be privileged to refrain from answering any questions presented to him where those answers might incriminate him in future proceedings. *Lefkowitz v. Turley*, 414 *U.S.* 70, 94 *S.Ct.* 316, 38 *L.Ed.*2d 274 (1973).

■ These conclusions, however, do not end the court's inquiry when faced with a motion to adjourn the trial in this case. The defense counsel cites the Law Division decision of *State v. Marrero*, 239 *N.J.Super.* 119, 570 *A.*2d 1047 (Law Div.1989). Defendant relies upon this case to support his claim of a constitutional right against self-incrimination, and the trial judge refers in that opinion to the "Hobson's choice" that the defendant in that case faced. The argument with respect to the "Hobson's choice" presented a defendant in *State v. Marrero*, and in the case at bar, deserves further consideration by this

court, but not because it is constitutionally based. Rather, in situations such as this, where the crime of attempted murder is charged and subsequent, separate, and unrelated acts of contempt/harassment are alleged—and where the evidence in the contempt/harassment trial may be used at the attempted murder trial—the court is required to perform a balancing test and determine the prejudice to the parties in interest by the requested delay. The court must then evaluate and weigh these conflicting prejudices so that in the end the interests of justice are best met.

## PREJUDICE TO THE STATE

If the defendant's motion is granted, it appears to the court that the following prejudice would result to the State and/or victim, Ms. Booker:

1. The intended purposes of the Prevention of Domestic Violence Act would not be fulfilled by a delay of the trial as articulated in *N.J.S.A.* 2C:25–2. The act envisions a prompt resolution of charges. Trial in the contempt/harassment matter normally would be expected to take place in one to two months after the complaint is filed. The attempted murder trial is not likely to take place for several months.

2. If the defendant were to be released from jail prior to trial in the attempted murder charge, then there could be prejudice to the State and victim because defendant Nelson would not be required to go to trial on the contempt charges for some time. If he is later found guilty on the contempt charges, the purpose of the Prevention of Domestic Violence Act would be frustrated because the intended benefit of a prompt hearing, resolution, and punishment would not apply to punish him for his acts or deter defendant Nelson from future contemptuous acts. Although he would not have legal license to continue contemptuous acts by a decision not to proceed to trial until after the attempted murder charge, the absence of a prompt hearing and the deterrent effects that would come from a

prompt trial and sentencing may lead defendant Nelson to believe that he was somehow advantaged by the pendency of the attempted murder charge and the delay of contempt/harassment trials. However, as long as Mr. Nelson is incarcerated, this prejudice is greatly reduced—if it exists at all.

There appears to be no prejudice to the State by proceeding with the trial on the contempt/harassment matter *before* the attempted murder trial.

## PREJUDICE TO THE DEFENDANT

If trial on the three contempt/harassment complaints takes place before the attempted murder trial, then defendant is faced with a true "Hobson's choice". Either he asserts his right against self-incrimination and thereby deprives himself of the best opportunity to defend himself (for example speaking to the issue of whether or not he wrote the letter and whether or not he had the requisite intent to harass, etc.) or he testifies at the contempt/harassment trials. If he so testifies, then he is subject to cross-examination by the prosecutor on the contents of the letters. That testimony, if against his interests, is admissible against him in the trial for attempted murder—even if at that trial defendant Nelson chooses not to take the stand in his own defense. *State v. Wilson,* 57 *N.J.* 39, 269 *A.*2d 153 (1970). This is true just as the three letters themselves may be admissible in the attempted murder trial if the trial judge determines that they indicated "consciousness of guilt or are inconsistent with innocence or tend to establish intent." *State v. Rechtschaffer,* 70 *N.J.* 395, 360 *A.*2d 362 (1975); *State v. Kuske,* 109 *N.J.Super.* 575, 264 *A.*2d 227 (1970). The Prosecutor could endeavor to utilize the defendant's decision to testify at that trial as a vehicle for discovery in the attempted murder trial.

In addition, it appears to the court that by denying the motion to delay the trial, there may be prejudice to the interest of justice for both the defendant and the State by having decisions

made in a disorderly persons trial, with respect to evidence that may be offered at the time of the attempted murder trial. For example, arguments may be raised at the attempted murder trial with respect to *res judicata* and collateral estoppel effect to be given to decisions in the contempt/harassment trial.

There appears to be no prejudice to the defendant by proceeding with the trial on the contempt/harassment matters *after* the attempted murder trial.

## CONCLUSIONS

Weighing the prejudices to the respective parties, it is clear that there is very little prejudice to the State in granting this motion to delay these three contempt/harassment trials and much prejudice to the defendant and the interest of justice if it is denied given the facts of this case as those facts exist today. Therefore, the motion to delay the trial in these three matters will be granted, subject, however, to the right of the prosecutor to move to schedule the contempt/harassment trial prior to the attempted murder trial if the circumstances change and if there is a shifting of prejudice that would cause the court to reach a different conclusion after balancing of prejudices to the State, victim, and defendant.

The court wishes to make clear that in the event that there are future acts of contempt by defendant Nelson against Ms. Booker, that this decision has no effect whatsoever with respect to whether those contempt matters will proceed to trial before the attempted murder trial. The facts of these three contempt/harassment cases are unusual because the essence of these three complaints are letters, which letters themselves are likely to be used as substantive evidence in the attempted murder trial. Future acts of domestic violence, if any, not dealing with evidence that would be used at the attempted murder trial present absolutely no impediment to prompt trial.